## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID GUNDERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>UQM TECHNOLOGIES, INC., DONALD W. VANLANDINGHAM, JOE MITCHELL, STEPHEN J. ROY, JOSEPH P. SELLINGER, and JOHN E. SZTYKIEL,<br><br>     Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

  Plaintiff David Gunderson ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by UQM Technologies, Inc. ("UQM" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning UQM and the Defendants.

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action on behalf of the public shareholders of UQM against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Danfoss Power Solutions (US) Company ("Danfoss," or "Parent") (the "Proposed Transaction").

2. On January 21, 2019, UQM entered into an Agreement and Plan of Merger (the "Merger Agreement") with Danfoss and a wholly owned subsidiary of Danfoss ("Merger Sub"). Pursuant to the Merger Agreement, Merger Sub will merge with and into the Company and the Company would become a wholly owned subsidiary of Danfoss (the "Merger").

3. Pursuant to the terms of the Merger Agreement, Danfoss will acquire all outstanding common shares of UQM for $1.71 per share in an all-cash transaction valued at approximately $100 million, including the assumption of UQM's debt.

4. The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of UQM. The Company has scheduled a special shareholder meeting for April 23, 2019 in connection with the Proposed Transaction.

5. On March 7, 2019, in order to convince UQM's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against UQM and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule

14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to UQM stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

10. Plaintiff is, and has been at all times relevant hereto, the owner of UQM common stock.

11. Defendant UQM is a Colorado corporation with its principal executive offices located at 4120 Specialty Place, Longmont, Colorado 80504. The Company's common stock is traded on the NYSE under the symbol "UQM."

12. Defendant Donald W. Vanlandingham ("Vanlandingham") is and has been the Chairman of the Company's Board at all times during the relevant time period.

13. Defendant Joe Mitchell ("Mitchell") is and has been the Company's President, CEO, and a director of the Company at all times during the relevant time period.

14. Defendant Stephen J. Roy ("Roy") is and has been a director of the Company at all times during the relevant time period.

15. Defendant Joseph P. Sellinger ("Sellinger") is and has been a director of the Company at all times during the relevant time period.

16. Defendant John E. Sztykiel ("Sztykiel") is and has been a director of the Company at all times during the relevant time period.

17. Defendants Vanlandingham, Mitchell, Roy, Sellinger, and Sztykiel are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant UQM, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of UQM (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

20. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of October 29, 2018, there were 54,253,731 UQM common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

21. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22. UQM is a developer and manufacturer of power-dense, high-efficiency electric motors, generators, power electronic controllers and fuel cell compressors for the commercial truck, bus, automotive, marine, and industrial markets. A major emphasis for UQM is developing propulsion systems for electric, hybrid electric, plug-in hybrid electric and fuel cell electric vehicles.

### The Company Announces the Proposed Transaction

23. On January 21, 2019, UQM and Danfoss jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> LONGMONT, Colo.--(BUSINESS WIRE)--Jan 21, 2019--UQM Technologies, Inc. (NYSE American: UQM) ("UQM" or the "Company"), a developer of alternative energy technologies, today announced that it has entered into a definitive merger agreement with the Danfoss Power Solutions (US) Company, a wholly-owned subsidiary of Denmark-based Danfoss A/S ("Danfoss"), under which Danfoss will acquire all outstanding common shares of UQM for $1.71 per share in an all-cash transaction valued at approximately $100 million, including the assumption of UQM's debt. Danfoss, a privately-owned multinational company with reported sales of €5.8 billion in 2017 (2018 full year results to be released on February 28), is a leading manufacturer of hydraulic systems, drives, motors, and components for the automotive, aerospace, HVAC, and energy industries. The merger anticipates that UQM will become part of the Danfoss Power Solutions segment.
>
> The cash consideration represents a premium of approximately 52.5% over UQM's closing share price on January 18, 2019 and a 71.4% premium to its weighted average trading price over the trailing 60 days. The transaction will be funded with Danfoss' cash on hand and is not subject to any financing condition. The merger agreement was unanimously agreed to by the Boards of Directors of both UQM and Danfoss; GDG Green Dolphin, LLC – which holds approximately

6

7.4% of the issued and outstanding shares of UQM – and all UQM directors and officers have executed Voting and Support Agreements in favor of the acquisition. Closing of the transaction is subject to approval by two-thirds of UQM shareholders and by the Committee on Foreign Investment in the United States ("CFIUS") as well as other customary closing conditions.

Joe Mitchell, UQM Technologies' President and Chief Executive Officer, stated, "We believe UQM will be an excellent addition to Danfoss as our products, business model, strategy and focus are closely aligned. Being part of a larger global enterprise will greatly improve our position to compete with other international players, open doors to new markets, and provide critical resources for UQM to continue developing the highly-engineered electric propulsion products we're known for today. We believe the transaction positions UQM well for the future – particularly in key geographies such as China and India, where Danfoss already operates – and provides an attractive return for our shareholders. We're proud of our many accomplishments and look forward to a future with Danfoss, with which we can enhance service for our customers, invest in technology, and adapt to the ever-changing dynamics of our core markets."

Kim Fausing, President & CEO of Danfoss, added, "It is a great pleasure to announce this transaction with UQM, which will position Danfoss for even stronger performance in the industries we serve. We see fast-growing demand for electric solutions within buses and trucks, off-highway vehicles, and marine markets in response to the more stringent emission regulations being imposed – stimulating interest in the efficiency and productivity gains our solutions bring. With an established North American presence, UQM will complement our global sales and manufacturing footprint nicely, further cementing our strong position in the marine as well as on- and off-highway markets. I look forward to welcoming the UQM team to Danfoss and our business."

The transaction is expected to close in the second quarter of 2019, subject to approval by UQM's shareholders and CFIUS.

24. The Proposed Transaction is subject to approval by the shareholders of UQM, as well as regulatory approvals. The Company has scheduled a special meeting of shareholders in connection with the Proposed Transaction for April 23, 2019.

### The Proposed Transaction is Unfair to Shareholders

25. The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

26. For instance, in connection with the Proposed Transaction, the Company agreed

7

to preclusive deal protection devices that ensure that no competing offer for the Company would be forthcoming.

27. Specifically, Defendants agreed to: (i) a no-solicitation provision that prohibits the Company from soliciting, initiating, or knowingly take any action to facilitate or encourage the submission of any other takeover proposal or the making of any proposal that could reasonably be expected to lead to a takeover proposal; and (ii) a provision that requires the Company to pay Danfoss a termination fee of $3.5 million.

28. These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives. Given that the preclusive deal protection provisions in the agreement between the companies impede a superior suitor from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

### Compensation to the Company's Officers and Directors Resulting From the Proposed Transaction

29. Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Transaction.

30. First, certain UQM insiders will be appointed the initial officers of the surviving corporation following completion of the Proposed Transaction:

> The officers of the Company immediately prior to the Effective Time shall be the initial officers of the Company after consummation of the Merger and shall hold office until their respective successors are duly elected or appointed and qualified, or their earlier death, resignation or removal in accordance with the charter and bylaws of the Company, subject to each officer's executive employment agreement then in effect. The Company shall continue to honor the agreements in effect as of the date of the Merger Agreement.

31. Next, certain Company insiders stand to receive significant financial benefits due to change of control provisions, causing all Company stock options and unvested restricted stock awards to automatically vest and convert into cash payments:

| Name | Number of Company Shares Subject to Options | Total Consideration for Options | Number of Shares of Unvested Restricted Stock | Total Consideration for Unvested Restricted Stock | Aggregate Consideration for Equity Awards |
|---|---|---|---|---|---|
| Joseph R. Mitchell | 766,872 | $ 560,987 | 69,831 | $ 119,411 | $ 680,398 |
| David I. Rosenthal | 441,147 | $ 318,994 | 33,770 | $ 57,747 | $ 376,741 |
| Adrian P. Schaffer | 391,250 | $ 285,166 | 26,515 | $ 45,341 | $ 330,507 |
| Josh M. Ley | 283,378 | $ 205,517 | 20,308 | $ 34,727 | $ 240,244 |
| Donald W. Vanlandingham | 106,966 | $ 73,379 | — | $ — | $ 73,379 |
| Stephen J. Roy | 140,382 | $ 107,829 | — | $ — | $ 107,829 |
| Joseph P. Sellinger | 118,346 | $ 60,706 | — | $ — | $ 60,706 |
| John E. Sztykiel | 89,162 | $ 60,706 | — | $ — | $ 60,706 |

32. Lastly, certain of the Company's executive officers stand to receive significant cash severance payments in the event they are terminated in connection with the Proposed Transaction:

| Name | Cash ($)(1) | Unvested Restricted Shares ($)(2) | Unvested Options ($)(3) | Benefits ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Joseph R. Mitchell | 839,264 | 119,411 | 289,876 | 8,156 | 1,256,708 |
| David I. Rosenthal | 183,305 | 57,747 | 140,823 | 8,058 | 389,933 |
| Adrian P. Schaffer | 166,777 | 45,341 | 104,544 | 5,624 | 322,285 |

33. Accordingly, certain of the Individual Defendants are motivated by their desire to secure personal benefits as a result of the Proposed Transaction. Certain directors and/or officers stand to reap significant financial benefits at the expense of the Company and its public shareholders if the Proposed Transaction is consummated, including the right to receive change-in-control benefits (such as the acceleration of their stock options), thus putting their own personal financial interests irreconcilably in conflict with the interests of the Company and its public shareholders.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

34. On March 7, 2019, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction. The Proxy Statement contains the financial opinion and analyses of the Company's financial advisor Duff & Phelps, LLC, Inc. ("Duff & Phelps") in connection with the Proposed Transaction.

35. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Management's Financial Projections

36. The Proxy Statement contains financial projections prepared by the Company's senior management given to the Board and Duff & Phelps in connection with the Proposed Transaction, but fails to provide material information concerning such.

37. First, the Proxy Statement notes that the Company provided Duff & Phelps with "[o]ther internal documents relating to the history, current operations, and probable future outlook of the Company, including financial projections for the Company, provided to Duff & Phelps by the Company's management," but fails to disclose any information concerning these projections prepared by UQM's management.

38.     Further, Duff & Phelps' *Discounted Cash Flow Analysis* notes that "Duff & Phelps performed a discounted cash flow analysis of the projected unlevered free cash flows of the Company for the fiscal years ending December 31, 2019 through December 31, 2029," but the Proxy Statement fails to disclose the financial projections related to that period of time, including, but not limited to unlevered free cash flows.

39.     The omission of the above-referenced projections and metrics renders the Proxy Statement materially incomplete and misleading.  Accordingly, the Company should disclose the projections prepared by management so that shareholders can have a complete mix of information in order to cast a fully informed vote for or against the Proposed Transaction.

<b>Material False and Misleading Statements or Material<br>
<u>Misrepresentations or Omissions Regarding KBW's Financial Opinion</u></b>

40.     The Proxy Statement contains the financial analyses and opinion of Duff & Phelps in connection with the Proposed Transaction, but fails to provide material information concerning such.

41.     With respect to Duff & Phelps' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's projected unlevered free cash flows for fiscal years December 31, 2019 through December 31, 2028; (ii) the basis for selecting a terminal growth rate of 3.0%; (iii) the inputs and assumptions underlying the discount rate range of 30.0% to 35.0% in connection with the High-growth stage analysis; (iv) the inputs and assumptions underlying the discount rate range of 20.0% to 25.0% in connection with the Stable-growth stage analysis; and (v) the discount rate range used for the Normalized-growth stage analysis, along with the inputs and assumptions in connection therewith.

42.     With respect to Duff & Phelps' *Selected Public Companies Analysis*, the Proxy Statement fails to disclose: (i) why Duff & Phelps did not select public companies that were

"directly comparable" to the Company; and (ii) the individual multiples calculated for each selected company.

43.     With respect to Duff & Phelps' *Selected Mergers and Acquisitions Transactions Analysis*, the Proxy Statement fails to disclose: (i) the total value of each selected transaction; (ii) the date of closing of each of the selected transactions; (iii) the per share value of each transaction selected; and (iv) the individual multiples calculated for each transaction selected.

44.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

45.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Proposed Transaction

46.     The Proxy Statement omits material information relating to the sales process leading up to the Proposed Transaction.

47.     The Proxy Statement fails to disclose the Company's several alternative funding sources considered in light of the Company not being able to rely on CNHTC's second tranche investment.

48. The Proxy Statement notes that the Company entered into confidentiality agreements with two potential bidders, but fails to disclose whether any such agreements contained "don't ask, don't waive" provisions which would preclude the potential suitors from making a topping bid for the Company.

49. Next, the Proxy Statement notes the formation of a Special Committee in connection with the Proposed Transaction, but fails to disclose whether the directors that made up the Special Committee were the same throughout the sales process. Further, the Proxy Statement does not disclose the specific powers of the Special Committee, or whether any transaction would require the approval of the Special Committee prior to voting of the full Board.

50. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

53.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

55.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

57. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

60. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

61. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

62. The Individual Defendants acted as controlling persons of UQM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of UQM, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

65. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated

in drafting and/or gave their input on the content of those descriptions.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 11, 2019                            Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, David Gunderson, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in UQM securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 03/08/2019

*[Signature: David F Gunderson]*

Signature

## **Exhibit A**

My transactions in UQM Technologies, Inc. (UQM) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| UQM | 5/3/2016 |  | P | 330 | $0.75 |